SEAN P. FLYNN (SBN 220184)
CRAIG SMITH (SBN 293020)
**GORDON REES SCULLY MANSUKHANI**
1 Liberty Street, Suite 424
Reno, NV 89501
Telephone: (775) 324-9800
Email: sflynn@grsm.com
smperlegos@grsm.com

Attorneys for Colton Scott Paulhus

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| In re | CASE NO. 24-24588-B-7 |
| COLTON SCOTT PAULHUS, | Chapter 7 |
| Debtor, | Hon. Christopher D. Jaime |
| ATH ASHEVILLE, et al., | |
| Creditors and Plaintiffs on behalf of itself and all others similarly situated, | Adversary Proceeding No. 25-02011 |
| v. | **DEFENDANT'S MOTION TO SET ASIDE DEFAULT** |
| COLTON SCOTT PAULHUS, | |
| Defendant. | |

COMES NOW DEFENDANT, Colton Paulhus ("Defendant"), Defendant in the instant adversary proceeding, by and through his attorney of record, Peter G. Macaluso, and does hereby file this Motion to Set Aside Default Judgment, as follows:

**I. INTRODUCTION**

By way of this motion, Defendant respectfully requests that the court set aside the Default Judgment pursuant to Federal Rules of Civil Procedure, Rule 60(b)(1) in that the complaint and summons were served within Bankruptcy Case No. 24-24588-B-7, but the Defendant failed to respond due to mistake, inadvertence, and/or excusable neglect. This, due to the complexity of the matter as evidenced in Docket 24-24588-B-7. (See Request for Judicial Notice #1)

To begin, Defendant in good faith believed that because this adversary case was served during the pendency and within the scope of his Chapter 7 Bankruptcy Case No. 24-24588-B-7, that his bankruptcy counsel would advise and assist him in filing the necessary documents to avoid such a drastic measure as a Default Judgment. Defendant believed that he was protected by counsel under the bankruptcy case whether bankruptcy counsel represented him in an adversary proceeding within the bankruptcy case or not; a case distinction that Defendant did not fully understand at any point within any of the cases. At all times, Defendant believed and now realizes that he mistakenly believed that the proper documents would be filed by his counsel within his bankruptcy case to avoid a non-dischargeable debt inside of his bankruptcy case. (See Request for Judicial Notice #2)

Finally and more significantly, however, is that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits."Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984); see also Latshaw v. Trainer Wortham, Co., Inc., 452 F.3d 1097, 1103 (9th Cir. 2006); Speiser, Krause Madole P.C. v. Ortiz, 271 F.3d 884, 890 (9th Cir. 2001); TCI Grp. Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001), as amended on denial en banc (May 9, 2001). Defendant has a meritorious defense, both factual and legal on all causes of action brought forth in this case. Defendant, at the granting of the Default Judgment was inadvertently without counsel for reasons that will

be discussed throughout this motion. As such, Defendant has now retained counsel to represent him in this adversary proceeding and is filing this timely motion in an effort to allow him his opportunity to be heard and defend himself. As such, the case can now be decided on its merits.

Accordingly, Defendant respectfully requests that the Default Judgment be set aside on mistake and inadvertence and/or excusable neglect.

## II. GOOD CAUSE EXISTS TO SET ASIDE THE DEFAULT JUDGMENT.

The Federal Rules provide that a "court may set aside an entry of default for good cause . ." Fed.R.Civ.Pro. 55(c). To determine "good cause", a court must "consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether there is no meritorious defense; or (3) whether reopening the default judgment would prejudice" the other party. See Franchise Holding II, 375 F.3d at 925-26. This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default. United States v. Aguilar, 782 F.3d 1101, 1105 (9th Cir. 2015). As will be discussed, none of these factors are true and good cause does exist to set aside the Default Judgment.

### A. DEFENDANT DID NOT ENGAGE IN CULPABLE CONDUCT RESULTING IN THE DEFAULT JUDGMENT.

Culpable conduct denotes some form of intentional or negligent act that leads to legal consequences. Defendant engaged in no conduct resulting in the Default Judgment because he believed he was protected by his bankruptcy attorney as he was seeking to obtain counsel for this adversary case. Defendant believed some form of direction or the proper paperwork i.e. a request for an extension to seek counsel or an opposition to the default judgment stating as such, would be filed until he was able to find counsel. Defendant had no idea and was not informed that the adversary proceeding within the bankruptcy case would be set apart from his bankruptcy case and ignored and/or neglected while he was unable to find affordable counsel.

Finally, Defendant's inability to find affordable counsel was not for lack of trying. The

MOTION TO SET ASIDE DEFAULT

first attorney Defendant met about the adversary case told him that he would be unable to find any attorney that would take his case for less than $85,000.00. Defendant is bankrupt and unable to pay such excessive legal fees, but this retainer fee expectation proved to be true. As such, Defendant did not engage in culpable conduct resulting in the Default Judgment. In fact, even during the times in which Defendant and his family were receiving death threats due to the failure of the company which forced him to flee the state with his family for safety reasons, he continued to work with his bankruptcy attorney, did what he was advised to do and relied on having legal protection and guidance during the pendency of the bankruptcy case.

### B. DEFENDANT HAS A MERITORIOUS DEFENSE

Defendant will present a meritorious defense to all allegations in the complaint. A brief explanation of the meritorious defenses as relevant to setting aside the default are as follows:

#### 1. 11 U.S.C. § 523(a)(2)(A)

To prevail under § 523(a)(2)(A), a creditor must establish the traditional elements of common law fraud. The elements are that: (1) the debtor made a false representation with the intent to deceive the creditor; (2) the creditor justifiably relied on the misrepresentation; and (3) the creditor suffered a loss as a result of the misrepresentation. This burden must be met by a preponderance of the evidence.

First, the significant problem with Plaintiff's allegation is he cannot show a fraudulent misrepresentation of present (or past) fact. For a representation regarding future performance to be actionable under § 523(a)(2)(A), a debtor must lack the intent to perform the future act when the promise was made. In re Carlson, 2008 WL 8677441, at 3 (10th Cir. 2008). There is no evidence that as the CEO of Anchor Tiny Homes, LLC, ("ATH") Defendant did not intend for ATH to perform on the contract.

As the evidence will establish, Defendant always had intent to perform by building the customized Accessory Dwelling Unit ("ADU") for Plaintiff. In fact, the design manager on staff immediately began working with Plaintiff and they were going back and forth with the architects to design his custom unit. This was taking some time because there were several requests to change the design which is common. Because ATH understood the value of

satisfied customers, the design manager always took the time to make sure the customer designs were exactly what they wanted and this typically involved back and forth communication with the design team and the customer. At this time, the permitting package was being prepared as well.

Moreover, when ATH entered into the contract on December 28, 2023 with Plaintiff, the business was growing and thriving and there were no indications of the struggles ahead due to erroneous business advice, rapid growth or that the company would be forced to cease operations. In fact, that same month of entering into the contract with Plaintiff, ATH secured $5 million dollar SBA loan, personally guaranteed by its officers and backed by real estate. Simultaneously, ATH engaged BMO, a professional investment bank, Raintree and Franchise Fastlanes, Inc. to secure outside investments and/or acquisition offers for ATH, LLC in and effort to corner the market in selling ADU's; a product in increasingly high demand. Based upon guidance by these professional organizations, the company aggressively continued hiring, marketing, and sales, believing that as promised and relied upon, growth would secure a pending equity deal to expand nationwide the same success and good will that ATH, LLC had always sustained for its customers; Plaintiff included.

Finally, while following the business strategy of the professional organizations, existing contracts were being performed and completed and Plaintiff's ADU performance was on track. That is, until the business took some rapid and devastating hits where any type of recovery became impossible because the relied upon funding never materialized. This, however, was not based on intent to defraud Plaintiff, but unforeseen circumstances that resulted in damaging the reputation of ATH so badly that this caused the company to fail. As such, Defendant has a meritorious defense to this cause of action.

**2. 2. 11 U.S.C. § 523(a)(4)**

11 U.S.C.§ 523(a)(4) exception to discharge for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. For the reasons discussed above, there was no fraud.

### 3. 3. 11 U.S.C. § 523(a)(6)

11 U.S.C. § 523(a)(6). A willful and malicious injury under Section 523(a)(6) requires proof of a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Under Section 523(a)(6), to meet the willful injury requirement, the plaintiff must show either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct. *In re Su*, 290 F.3d 1140, 1143 (9th Cir. 2002). As discussed above, there was no subjective intent to defraud Plaintiff, even moreso, there was no malicious intent to inflict injury to Plaintiff. From the beginning of the business relationship, Defendant only intended and sought measures at all times, to perform and complete the contract to Plaintiff's satisfaction. That is, until it became impossible for ATH to do so.

Finally, it is vital to note that debts arising from recklessly or negligently inflicted injuries are not within the scope of Section 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. at 64; see In re Quari, 357 B.R. 793, 798 (Bkrtcy. N.D. Cal., 2006). The evidence establishes that Defendant's intent was to build a successful business and to perform on the contract with Plaintiff until complete. However, due to unforeseen circumstances, in the end, the business was an epic failure, but there was never any malicious intent to inflict injury to Plaintiff.

### 4. VICTIMS OF CORPORATE FRAUD COMPENSATION FUND

Plaintiff seeks to amend the Default Judgment to include a claim by this court that the fraud found within the Default Judgment satisfies *California Corporations Code* §§ 2280-2296 in an effort to obtain compensation from the Victims of Corporate Fraud Compensation Fund (VCFCF"). Plaintiff cites to *California Corporations Code* § 2281(f) which according to him defines the judgment as eligible for VCFCF compensation as those "based on corporate fraud, misrepresentation, or deceit made with intent to defraud."

As his defense, Defendant was the CEO of ATH, a Limited Liability Company. ATH was not a corporation as required under California Corporations Code 2281(e), which states that the debtor/defendant be a corporation as defined and registered within the State of California. (Exhibit 3 - State of California -Limited Liability Company) As such, Plaintiff will

Gordon Rees Scully Mansukhani, LLP
1 East Liberty Street, Suite 424
Reno, NV 89501

**Gordon Rees Scully Mansukhani, LLP**
1 East Liberty Street, Suite 424
Reno, NV 89501

1 be unable to meet the requisite qualifications to apply for Victims of Corporate Fraud

2 Compensation Fund because ATH is not a corporation. As such, Defendant has a meritorious

3 defense for this cause of action.

### 5. ACH WITHDRAWALS FROM PLAINTIFF'S BANK ACCOUNT

In his complaint, Plaintiff goes to great lengths alleging that funds were removed from his account without his knowledge or approval. This is factually impossible and untrue. Plaintiff came to ATH requesting a discount if he paid in full. He was sent invoices and paid these invoices himself online. The standard practice at ATH is to send invoices as the work is completed and the customers pay the invoices online. The software used by ATH is not capable of withdrawing funds from a customer's account and it was always within Plaintiff's control to pay the invoices or not. As such, there is a meritorious defense to this claim. (Request for Judicial Notice #3; #4 - Dckt. #10;#11)

### C. SETTING ASIDE THE DEFAULT JUDGMENT WILL NOT RESULT IN PREJUDICE TO THE OPPOSING PARTY.

Fortunately for Plaintiff, there is no prejudice to him as the opposing party because he is seeking to amend the Default Judgment to include corporate fraud allegations. The timing is perfect as to allowing for his opportunity to prove his claims on their merits as opposed to advantaging himself due to Defendant's mistaken belief that he was represented within the bankruptcy case and where he inadvertently failed to file an opposition to the default.

In conclusion, Plaintiff will not be able to prevail in his causes of actions as there was never fraudulent intent, misrepresentation and/or any willful or malicious act towards Plaintiff nor funds wrongfully withdrawn by ATH from Plaintiff's account. The company was thriving and had been a proven success when the contract was entered into and performance began as per usual company procedures. The catastrophic failure of the company causing financial harm to Defendant, now bankrupt, and customers alike was not based upon fraud or misrepresentation. Rather, it was unforeseen circumstances resulting from bad business decisions under the guidance of professionals that were made in a rapidly growing industry. As such, there are numerous defenses, both factual and legal, in this case. Accordingly,

1 Defendant respectfully requests that the Default Judgment be set aside.

## III. FEDERAL RULES OF CIVIL PROCEDURE, RULE 60(B)(1) ALLOWS THE COURT TO SET ASIDE THE DEFAULT ON THE BASIS OF MISTAKE, INADVERTENCE, SURPRISE, OR EXCUSABLE NEGLECT WHERE THE EXCUSE IS REASONABLE.

Federal Rules of Bankruptcy Procedure, Rule 9024, provides that "Rule 60 F.R.Civ.P. applies in cases under the Code…." In turn, Federal Rules of Civil Procedure, Rule 60(b)(1) allows the court to set aside the default on the basis of "mistake, inadvertence, surprise, or excusable neglect." As Rutter explains: "Surprise, inadvertence or excusable neglect: These terms all boil down to excusable neglect: i.e., has the moving party shown a reasonable excuse for the default." *Setting Aside a Default or Default Judgment, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial* Ch. 6-E (*Meadows v. Dominican Republic*, 817 F.2d 517, 520 (9th Cir. 1987)). As has been discussed, the moving party has shown a reasonable excuse for the default.

Additionally, "[o]ur rules for determining when a default should be set aside are solicitous towards movants, especially those whose actions leading to the default were taken without the benefit of legal representation." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1089 (9th Cir. 2010).

In this case, while Defendant mistakenly believed he had counsel protecting him in the adversary proceedings, he did not. Defendant's actions leading to the default were taken without the benefit of legal representation. As such, now that Defendant has retained counsel at a fair and realistic fee, Defendant should be afforded an opportunity to defend himself. There was clearly excusable neglect as Defendant was surprised and caught off guard when the Default Judgment was granted offering him no opportunity whatsoever to defend himself.

Finally, "[e]xcusable neglect is an equitable concept that takes account of factors such as 'prejudice, the length of the delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*,

375 F.3d 922, 927 (9th Cir. 2004). As explained, the Defendant believed his attorney would move to file the proper paperwork to protect him while he struggled to find counsel. At all times, Defendant acted in good faith in seeking counsel and had a reasonable and mistaken belief he had representation until he did find and retain new counsel. There is a reasonable delay and the opposing party is moving to amend the default to include a new allegation of "corporate fraud" so there is no prejudice as the case can be decided on the merits now that Defendant has retained new counsel. As such, this is the very essence of excusable neglect because a mistaken belief that counsel would be preparing a response is sufficient to set aside the default.

### A. MISTAKEN BELIEF THAT COUNSEL WOULD BE PREPARING A RESPONSE IS SUFFICIENT TO SET ASIDE THE DEFAULT.

"The mistake of fact must be reasonable under the circumstances. This usually turns on the justifiability of Defendant's failure to ascertain the correct facts. Relief will not be granted where the failure to respond reflects the conscious desire to avoid defending the suit." Setting Aside a Default or Default Judgment, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 6-E, 6:158.

Here, Defendant believed his attorney would prepare a response or at minimum, advise him in his next appropriate action while he sought counsel for the adversary case. At no time, however, did Defendant believe that his bankruptcy counsel would be served with the Entry of Default within the bankruptcy case and let it go to a Default Judgment. Defendant expected and mistakenly believed that his bankruptcy counsel would assist him in what to do and file paperwork to assist him in allowing time to find and retain counsel since he could not afford the $85,000.00 retainer fee that he was being told he would need to pay for representation for the adversary case inside of the bankruptcy case. This mistake of fact is reasonable under the circumstances.

Moreover, where a bankruptcy attorney is served with an adversary case within the bankruptcy case and the debtor is unable to find counsel, it is reasonable for the debtor to believe he is protected by the bankruptcy case and his counsel for any non-dischargeability

**Gordon Rees Scully Mansukhani, LLP**
1 East Liberty Street, Suite 424
Reno, NV 89501

action that is part of the bankruptcy case itself. It is reasonable for a debtor not to clearly understand the distinction within a bankruptcy case of the various ways creditors may challenge dischargeability of a debt and what is a typical bankruptcy procedure compared to non-dischargeability adversary cases. It is reasonable that a debtor would be confused and not understand that his bankruptcy attorney will not represent him when a creditor sues him inside of the bankruptcy case in an adversary proceeding and the gravity of what this even means in the scope of the bankruptcy case itself. It is reasonable when a debtor is struggling to retain counsel for an adversary case inside of the bankruptcy case for a debtor to believe his bankruptcy counsel will protect him until he is able to retain counsel It is reasonable that a debtor would not anticipate his bankruptcy attorney allowing a Default Judgment rendering a debt non-dischargeable in his bankruptcy case to even occur. It is reasonable that a debtor suffering financial devastation hires a bankruptcy attorney to guide and advise him because he does not know bankruptcy law and procedure himself. As such, the mistake of fact that Defendant believed he had legal representation in the scope of the bankruptcy and that his attorney would advise him and had a duty to legally and procedurally protect him from a Default Judgment rendering a debt in the bankruptcy case as non-dischargeable is reasonable.

This Court is empowered to hear this adversary on the merits. Defendant respectfully requests that this Court set aside the default.

### IV. CONCLUSION

For the reasons set forth above, Defendant respectfully requests that this Court set aside the Default Judgment pursuant to the Federal Rules of Civil Procedure § 60(b)(1).

Dated: December 5, 2025　　　　　　　　　　　　**GORDON REES SCULLY MANSUKHANI**

*S/ SEAN FLYNN*

By: _____
Sean P. Flynn
Samantha M. Perlegos
Attorneys for Third-Party Defendant
FRANK BERGREN